UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| In re:<br><br>BARRY FRANK,<br>    Debtor. | Case No. 18-42131 |
| AMERICAN RECEIVABLE CORP.,<br>    Plaintiff,<br>v.<br>BARRY FRANK,<br>    Defendant. | Adv. No. 19-4001 |

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Respectfully submitted,

/s/ Eric L. Scott
Eric L. Scott
escott@sv-legal.com
State Bar No. 24002919
Scott Viscuso, PLLC
1105 North Bishop Avenue
Dallas, TX 75208
Telephone: 214-289-2891
Facsimile: 480-393-506

ATTORNEYS FOR AMERICAN RECEIVABLE CORPORATION

# ISSUES PRESENTED

1. WHETHER FRANK'S LIABILITY IS NON-DISCHARGEABLE UNDER THE EMBEZZLEMENT OR LARCENY PROVISION OF 11 U.S.C. §523(A)(4).

2. WHETHER FRANK CAN CONTROVERT ARC'S CLAIMS, DAMAGES AND SUMMARY JUDGMENT EVIDENCE.

3. WHETHER ARC IS ENTITLED TO ATTORNEYS' FEES FROM FRANK.

## NATURE OF THE ACTION

Plaintiff American Receivable Corporation ("ARC") filed this adversary proceeding asking the Court to determine that Barry Frank's ("Frank") liability to ARC is non-dischargeable, or is an exception to discharge under 11 U.S.C. §523(A)(4), due to Frank's embezzlement or larceny. Frank's current liability to ARC, exclusive of attorneys' fees and interest, is $144,510.10. Frank does not dispute receiving, depositing, comingling and using ARC's property for an unauthorized and improper use. Instead, Frank challenges the dischargeability of his liability to ARC.

## SUMMARY

ARC is a company in the business of purchasing account receivables from business that provide goods and services on account such as SKI. ARC and SKI entered into a Purchase and Security Agreement ("PSA") wherein ARC purchased SKI's accounts receivable from SKI customers including Walmart, Inc. ("Walmart"). ARC's acquisition of SKI's accounts receivable includes an immediate right to possess all payments made by Walmart relating to these accounts receivable. As a material inducement for ARC entering into the PSA and purchasing SKI's accounts, Frank signed an Individual Guaranty Agreement ("Guaranty") whereby he unconditionally guaranteed SKI's prompt payment and performance of all of SKI's obligations to ARC, including those arising under the PSA. For a period of thirty-one (31) months, ARC and SKI operated under the PSA without any material issues, specifically including the delivery of payments by Walmart directly to ARC for invoices purchased by ARC.

In September of 2017 and continuing to March of 2018, Walmart, without prior notice to or request from ARC, delivered fourteen (14) fourteen payments totaling $310,113.16. Of these fourteen (14) payments, two (2) have been removed by ARC from its current claims.[1] Of the remaining (12) Walmart payments totaling $290,948.49, ARC received payment from Frank totaling $103,592.53 resulting in a net amount of $187,355.96 in Walmart payments received directly by Frank rather than ARC ("Walmart Misdirected Payments"). Despite ARC's clear ownership and immediate right of possession to the Walmart Misdirected Payments, coupled with the PSA's requirement to immediately deliver to ARC all Walmart Misdirected Payments, Frank retained, endorsed and deposited the Walmart Misdirected Payments, each action is an unauthorized and improper.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. On January 6, 2014, ARC and SKI entered into the PSA.[2] Simultaneously, Frank executed the Guaranty whereby he unconditionally guaranteed SKI's prompt payment and performance of all of SKI's obligations to ARC, including those arising under the PSA.[3]

2. The PSA contains the following undisputed provisions:

---

[1] ARC's claims do not include the Walmart invoices and corresponding payments numbered 1958543 ($15,538.25) and 2005105 ($3,626.42). In an effort to avoid further delay from receiving payment from Frank and despite the express terms of the PSA, ARC removed these two (2) Walmart payments from its claims.
[2] Ex. 1. Frank testified that this exhibit, along with the Guaranty attached hereto as Ex. 2, are true and correct copies of the PSA and Guaranty. *See* Frank deposition excerpts attached as Ex. 3, pg. 181; Ln. 2-11.
[3] Ex. 2, ¶ 2, pg. 1.

a. Misdirected Payment is any payment received by Seller (SKI) instead of Purchaser (ARC) and is to be held in trust by SKI separate and apart from SKI's own funds and is subject to ARC's direction and control. Misdirected Payments must be delivered to ARC on the next banking day following SKI's receipt of same and either paid in the identical form received or the full cash equivalent of the amount of the Misdirected Payment.[4]

b. Purchased Accounts are Accounts purchased by ARC under the PSA which have not been repurchased by Frank.[5]

c. Accounts or Account are any accounts receivable arising out of the sale of goods or performance of services by SKI during the term of the PSA.[6]

d. Obligation or Obligations includes all principal, interest, fees, charges, expenses, attorneys' fees, other amounts chargeable to SKI or incurred by ARC and all past, present and future amounts owing by SKI to ARC.[7]

e. Collateral includes all accounts and accounts receivable.[8]

f. Reserve Account is a bookkeeping account that is funded as to a Purchased Account only when the Purchased Account is paid in full and represents an unpaid portion of the Purchase Price to ensure SKI's performance under the PSA.[9]

g. All payments made by SKI's debtors (i.e., Walmart) are to be made to ARC and delivered to ARC at its address listed in the PSA and SKI's invoices relating to Purchased Accounts must include notice that the proceeds due under this invoice have been sold to ARC and payment must be made to ARC at its address provided in the PSA.[10]

3. The Guaranty contains the following undisputed provisions:

a. Guarantor (Frank) hereby unconditionally guarantees to ARC the full and prompt payment and performance of all obligations, indebtedness and covenants of SKI to ARC including, but not limited to those arising under the PSA.[11]

---

[4] Ex. 1, ¶ 1.01, pg. 2.
[5] Ex. 1, ¶ 1.01, pg. 2.
[6] Ex. 1, ¶ 1.01, pg. 1. "Account" or "accounts" are interchangeable with "invoices" in this motion and in the context of the PSA.
[7] Ex. 1, ¶ 1.01, pg. 2.
[8] Ex. 1, ¶ 1.01, pg. 1.
[9] Ex. 1, ¶ 1.01, pg. 3.
[10] Ex. 1, ¶ 2.05 & 9.02
[11] Ex. 2, ¶ 2, pg. 1.

    b. <u>Guarantor's liability</u> is absolute, immediate and unconditional guarantee of payment and not collectability. [12]

    c. <u>No set-off</u>, counterclaim, reduction, or diminution of any obligation or any defense of any kind or nature that SKI may have against ARC shall be available hereunder to Frank.[13]

4. ARC purchased SKI's accounts receivable, including those of SKI's customer Walmart. In return, SKI sold, transferred, conveyed and assigned to ARC all legal and equitable right, title and interest in the Purchased Accounts providing ARC with ownership of these Purchased Accounts, including all payments made or received relating to these Purchased Accounts.[14]

5. The Guaranty was a material inducement for ARC entering into the PSA.[15]

6. In September of 2017 and continuing to March of 2018, Frank directly received, endorsed and deposited into SKI's bank account the Walmart Misdirected Payments totaling $290,948.49.[16]

7. Frank admits that he should have immediately delivered to ARC all of the Walmart Misdirected Payments, in full, yet did not do so.[17]

8. Frank transmitted to ARC by check payments totaling $103,592.53 of the Walmart Misdirected Payments.[18]

---

[12] Ex. 2, ¶ 4, pg. 1.
[13] Ex. 2, ¶ 5, pg. 1.
[14] Ex. 1, ¶ 2.04. The PSA further provides that the relationship between ARC and SKI is that of purchaser and seller, not lender and borrower. Ex. 1, ¶ 5.04. Frank testified that ARC purchased account receivable, rather than loaned money. *See* Ex. 3, pg. 140-141, ln. 24-2.
[15] Ex. 3., pg. 131, ln. 6-14.
[16] Ex. 3, pg. 134, ln. 6-9; pg. 145, ln. 5-11 and Ex. 8.
[17] Ex. 3, pg. 133, ln. 12-17; pg. 136, ln. 11-17.
[18] Ex. 4, ¶ 5.

9. Frank retained and used the remaining $187,355.96 of the Walmart Misdirected Payments.[19]

10. The PSA was in effect at all relevant times, including the time period of Frank's receipt and improper control over and use of the Walmart Misdirected Payments.[20]

11. ARC did not consent or agree to Frank's retention of any percentage or portion of the Walmart Misdirected Payments.[21]

12. On September 20, 2019, Judge Rhoades signed an order approving a settlement agreement between SKI and the Chapter 7 trustee whereby SKI and Frank assigned their claims, damages and defenses (if any) against ARC to the Chapter 7 trustee.[22]

13. Per the PSA, ARC had an immediate right of possession of the Walmart Misdirected Payments, regardless if those payments were for invoices purchased by ARC.[23]

## ARGUMENTS AND AUTHORITIES

I.   Standard of review.

Federal Rule of Civil Procedure 56, which is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, provides that a court shall grant summary judgment on a claim or defense (or a part thereof) identified by

---

[19] Ex. 4, ¶ 9.
[20] The PSA is automatically extended for one year beginning January 6, 2015, unless and until SKI provides written notice by CMRRR within 90 days of the PSA anniversary date, which it did not.
[21] Ex. 3, pg. 192, ln 3-6 & Ex. 4, ¶ 11.
[22] Ex.5.
[23] Ex. 3, pg. 189, ln. 15-22.

the movant for such relief "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[24] The purpose of a summary judgment is to isolate and dispose of factually unsupported claims.[25] Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] by a preponderance of the evidence that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[26] A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[27] The nonmovant cannot satisfy his summary judgment burden with conclusory allegations, unsubstantiated assertions, alleged factual disputes or only a scintilla of evidence.[28] The substantive law identifies which facts are material.[29]

2. Frank's retention and use of the Walmart Misdirected Payments is not dischargeable.

A debt arising from embezzlement is excepted from discharge. Embezzlement requires the following elements: (1) Defendant obtained possession of the property; (2) Defendant's appropriation of the property was for a use other than that for which he was entrusted; and (3) with circumstances indicating fraud.[30] Why or how the Walmart Misdirected Payments were received by Frank is immaterial to this analysis as Frank

---

[24] Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.
[25] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).
[26] Fed. R. Civ. P. 56(a).
[27] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[28] *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075 (5th Cir. 1994) (en banc).
[29] *Id.*
[30] *In re Littleton*, 942 F.2d 551, 555 (9th Cir. 1991). No intent to defraud is required unless there is an allegation of a breach of fiduciary duty.

admits to receiving the Walmart Misdirected Payments thereby establishing the first element.[31]

As agreed to by Frank in the PSA and Guaranty, Frank was required to hold any and all of the Walmart Misdirected Payments in trust for ARC until he either delivered to ARC, no later than the next banking day following the date of receipt of the Walmart Misdirected Payments, the payment in identical form received or in the full cash equivalent of the amount of the misdirected payment.[32] This use is the only use of the Walmart Misdirected Payments authorized to Frank. Frank's undisputed receipt, endorsement, deposit and use of the Walmart Misdirected Payments establishes the second element.[33]

Frank testified that he had no intention or expectation of providing the Walmart Misdirected Payments to ARC, in full, as required by the PSA.[34] Frank further testified that because he believed ARC was "strangling" his company, he retained and used the Walmart Misdirected Payments to cover whatever company expenses he approved for payment.[35] Frank kept his "fair share" and sent ARC what he unilaterally determined was an "appropriate" amount.[36] He intentionally avoided the timely delivery, in full, of all Walmart Misdirected Payments, thereby ensuring that ARC continued to fund (purchase) SKI's accounts receivable and prevent ARC from exercising any remedies afforded it and possibly mitigate its damages.[37] Further, Frank intentionally concealed his receipt and

---

[31] See Ex. 3, pg. 179, ln. 6, 22-25; pg. 180, ln. 1-11; pg. 184, ln. 16-19. Frank's reference herein to Exhibit 5 is reproduced and attached to this motion as Exhibit 8.
[32] Ex. 1, ¶ 1.01, pg. 2
[33] Frank testified that he "kept his fair share of the funds" and sent what he felt was a "fair share" to ARC. See Defendant's First Amended Interrogatory Responses, #5 and #18 attached hereto as Ex. 6.
[34] Id.
[35] Ex. 3, pg. 172-173, ln. 24-4.
[36] Ex. 9, Interrogatory No. 6, subsection 1.
[37] Ex. 4, ¶ 10.

use (intended and actual) of the Walmart Misdirected Payments until it was too late for ARC to act and possibly capture some or all of its property or otherwise intercept any further misdirected payments by Walmart.[38] Accordingly, the third element is established.

Larceny differs from embezzlement in that at the time of Frank's taking of ARC's property, Frank possessed a "felonious" intent or Frank's taking and carrying away of ARC's property with the intent to convert the Walmart Misdirected Payments for Frank's own use and without ARC's express consent.[39] The summary judgment evidence establishes that Frank had knowledge that his receipt and retention (i.e., taking) of the Walmart Misdirected Payments was not authorized and that Frank intended to use the Walmart Misdirected Payments for improper purposes and without repaying or otherwise delivering the Walmart Misdirected Payments to ARC are required by the PSA.

3. Frank cannot controvert ARC's claims, damages and summary judgment evidence.

The Guaranty clearly states that Frank has no claim of "set-off, counterclaim, reduction, or diminution of any obligation or defense of any kind or nature that Seller (SKI) may have against ARC".[40] Further, the PSA clearly provides that "Seller (SKI) hereby releases and exculpates Purchaser (ARC)…from any liability arising from any acts under this Agreement (PSA) or in furtherance or enforcement thereof whether of omission or commission, and whether based upon any error of judgment or mistake of law or fact, except for willful misconduct."[41] Frank is further precluded from challenging ARC's claims and relief sought in this summary judgment motion as Frank has assigned all such claims

---

[38] *Id.*
[39] *In re McDaniel*, 181 B.R. 883, 887 (Bankr. S.D. Tex. 1994).
[40] Ex. 2, ¶ 5, pg. 1.
[41] Ex. 1, ¶ 14.07, pg. 13.

to the Chapter 7 trustee.[42]  Therefore, there is no genuine issue of material fact relating to ARC's claims and Frank is otherwise precluded from challenging this summary judgment motion.

Frank's verified interrogatory responses confirm that he is unable to set forth or otherwise identify any amounts or portion of the Walmart Misdirected Payments that he contends ARC could or should not have retained, whether ARC purchased a corresponding invoice.[43]  Frank is unable to controvert ARC's summary judgment evidence reflecting the amount Frank paid to ARC from the Walmart Misdirected Payment or the number of checks, if any, he may have provided to ARC.[44]  Further, Frank is unable to controvert ARC's summary judgment evidence regarding the Reserve Account as he testified that he does not know what this is or how it is used, what fees can be applied to this account, or what other charges can be applied to this account.[45]  Therefore, there is no material issue of genuine fact precluding ARC from summary judgment.

4.   ARC is entitled to attorneys' fees

Under the "American Rule" applied in federal litigation, a prevailing litigant may not collect attorneys' fees from his opponent unless such fees are authorized by federal statute or an enforceable contract between the parties. With regard to a request by a prevailing creditor for attorneys' fees, attorneys' fees form a part of a bankruptcy claim and can be non-dischargeable where the creditor has a contractual right to them valid

---

[42]  *See* Ex. 5 and Ex. 3, pg. 70, ln. 5-13; pg. 128, ln. 16-18 and pg. 129, ln. 9-21.  This deposition testimony confirms that Frank's amended answer, Docket #11, specifically paragraphs 4-17 of this amended answer, no longer belong to Frank.
[43]  Ex. 7, interrogatory #4.
[44]  Ex. 3, pg. 194-195, ln. 17-8.
[45]  Ex. 3, pg. 158, ln. 20-23; pg. 159, ln. 21-25; pg. 160, ln. 1-9; pg. 162, ln. 19-22.

under state law.[46]  If the contractual right to attorneys' fees is valid and enforceable, that obligation becomes part of the "debt" deemed non-dischargeable under section 532(a)(2).[47]

In this case, ARC has a contractual right to recover its attorneys' fees and the request for attorneys' fees should be granted in the amount of $46,344.50 and costs of $5,385.80.[48]

## CONCLUSION

A fresh start is not promised to all who file for bankruptcy relief, but only to "the honest but unfortunate debtor."[49]  Here, Frank is neither honest nor unfortunate.  For these reasons, ARC respectfully asks this Court to grant this Motion for Summary Judgment and find that Frank's liability to ARC under the PSA is non-dischargeable, or is an exception to discharge, that ARC is entitled to an award of attorneys' fees, and award any other relief that ARC may show itself justly entitled under the circumstances.

---

[46] *See In re Jordan*, 927 F.2d 221, 226-27, overruled on other grounds by *In re Coston*, 991 F.2d 257 (5th Cir. 1993).
[47] *See*, e.g., *In re Sheridan*, 105 F.3d at 1166-1167.
[48] Ex. 1, ¶. 15.01, pg. 13 and Ex. 2, ¶. 12 & Ex. 10, Declaration of Attorney Eric L. Scott.
[49] *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

Respectfully submitted,

/s/ Eric L. Scott
ERIC L. SCOTT
SCOTT | VISCUSO, PLLC
escott@sv-legal.com
1105 North Bishop Avenue
Dallas, Texas 75208
214-289-2891
480-393-5063– Fax

ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

I certify that on this the 31st day of January 2019, a true and correct copy of the foregoing was electronically filed with the Clerk of the United States District Court pursuant to its CM/ECF system which would then electronically notify the CM/ECF participants in this case.

/s Eric L. Scott
Eric L. Scott