UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| AMERICAN RECEIVABLE § | |
| CORPORATION, § | |
| vs. § | Adv. No. 19-4001 |
| BARRY FRANK § | |

## PLAINTIFF'S SUMMARY JUDGMENT REPLY AND OBJECTIONS

Defendant's Summary Judgment Response ("Response") substantiates Plaintiff's claims of embezzlement and larceny through admissions while failing to create a *genuine issue* of *material fact* through proper summary judgment evidence. More importantly, Defendant has waived all rights of set-off, reduction or any defense against Plaintiff in this action. Therefore, Defendant's liability to Plaintiff remains non-dischargeable under the embezzlement or larceny exception.

1.  The Response contains fourteen (14) statements of undisputed facts ("Statements") wherein Defendant admits to embezzlement. Frank admits that he directly received, endorsed and deposited into SKI's bank account the Walmart Misdirected Payments ("WMP") totaling $290,948.49, establishing the first element. *See* Statement #5. Defendant admits that he failed to timely deliver to Plaintiff, in full, *all* WMP, despite Plaintiff's immediate right of possession of these payments, establishing the second element. *Id*. #7 & 14. Defendant admits that he did not advise or notify Plaintiff of his receipt and retention of *all* WMP he received, Plaintiff did not have knowledge of or otherwise approve Defendant's misappropriation of these payments, and he retained and used at least $31,297.74 of Plaintiff's property, establishing the third element. *Id*. at # 5, 7, 9, 11 & 14.

2.  Defendant received Plaintiff's property but failed to return it to Plaintiff pursuant to the PSA. Courts have routine held that such action constitutes embezzlement. *See In Re*

*Brady*, 101 F.3d 1165 (6th Cir. 1996), wherein the debtor sold property belong to the creditor, failed to disclose to creditor and divide the sales proceeds as per the parties' agreement, and transferred the funds to the debtor's company; *In Re Rifai*, 604 B.R. 277 (Bankr. S.D. Tex. 1999), citing *In Re Davenport*, 353 B.R. 150 (Bankr. S.D. Tex. 2006), wherein a senior attorney failed to make payments to an associate attorney at the agreed upon higher percentage and this debt was not dischargeable, and: *In Re Shuler,* 20 B.R. 163 (Bankr. D. Idaho 1992), wherein the court found that the seller's failure to give the owner his percentage of proceeds from a consignment sale were not dischargeable.

3. Circumstances of fraud can be inferred from the totality of the circumstances. Plaintiff is not required to establish that Defendant's misrepresentations or conduct induced Plaintiff to part with its property. *In Re Bowman*, 607 B.R. 614 (Bankr. W.D. Ky., 2019). Instead, Plaintiff is required to prove misappropriation and circumstances of fraud, such as concealing the misappropriation, while the court remains free to consider Defendant's credibility and character. *Id*. Per Defendant's admissions, he concealed his receipt and retention of *all* the WMP through his failure to advise or notify Plaintiff of his receipt and retention of each of these payments. *See* Statement #4. Defendant retained and used $31,297.74 of the WMP, without notice to and consent or approval of Plaintiff. *See* Statement #7 & 9.

4. Fraudulent intent is satisfied as Defendant was aware Plaintiff wanted the WMP but took each for himself without an accounting. *See In Re Laughlin*, 2012 WL 1014754 (Bankr. S.D. Tex. 2012), citing *In Re Buhay*, 77 B.R. 561, 563 (Bankr. W.D. Tex. 1987). Defendant acknowledges that Plaintiff did not consent to his retention of any percentage or portion of the WMP and Plaintiff has an immediate right of possession of all these funds. *See* Statement #11&14. The Declaration attempts to provide his interpretation of an accounting, but long after

2

the misappropriation and only as a result of this action. Defendant alone had access to the WMP (once received), had knowledge that Plaintiff wanted these payments (per the PSA and absence of consent or approval to the contrary), and failed to provide any accounting for the WMP at the time of his misappropriation (did not identify all checks and amounts received and the corresponding SKI invoices applicable to these payments). *See In Re Amerejuve, Inc.*, 2015 WL 2226344 (Bankr. S.D. Tex. 2015).

5.      Larceny is synonymous with theft. Plaintiff contends that Defendant's subsequent retention and use of any portion of the WMP constitutes larceny. Specifically, Defendant took Plaintiff's property without its consent and against its will (per the PSA all WMP belong to Plaintiff) and converted this property for a use by someone other than Plaintiff, i.e., Defendant or SKI. *See In Re Stollman*, 404 B.R. 244 (Bankr. E.D. Mich. 2009). Defendant's efforts to negate fraudulent intent fall short as he failed to advise Plaintiff of his receipt of each payment and amount comprising the WMP, his retention and use of each payment, his failure to hold these payments in trust in a separate account (as required by the PSA and acknowledged by Defendant in Statement 1a), his refusal to deliver *all* of the WMP in full to Plaintiff per the PSA, and the absence of any approval or consent by Plaintiff to allow Defendant to misappropriate and use the WMP.

6.      The Declaration, attached as Ex. A to the Response ("Declaration"), is subject to several objections asserted below. Additionally, the Declaration, while lengthy, is littered with inadmissible opinions, speculation, legal conclusions, improper interpretation of summary judgment exhibits, and utter confusion. More importantly, the Declaration contradicts the Response's exhibits, the Response and the Declaration. While Plaintiff prays that this Court strike the Declaration in its entirety, it is confident that this Court will give it the "evidentiary"

3

weight it deserves.

7. The Response attempts to diminish or eliminate the circumstances of fraud by alleging that Defendant's actions, a clear breach of the PSA, were done in the open and without any concealment. The Declaration confirms that of the seven (7) payments totaling $218,361.23 he received from Walmart that comprise the WMP, he only paid $171,873.88 to Plaintiff, leaving a delta of $46,487.35 that is unexplained and unaddressed in the Response or Declaration. Per Defendant's Ex. 42, he admits to retaining and not paying Plaintiff $55,603.67. If the Court includes those additional amounts he did not pay to Plaintiff because Plaintiff did not purchase the corresponding invoices (irrelevant to Frank's obligations to deliver these misdirected payments in full to ARC per PSA and Statements) totaling $34,324.92, Ex. 42 reflects that he retained $89,928.59 of the WMP. If the Court reviews Defendant's Ex. 43, the difference between the amount Plaintiff purchased or funded and the amounts he paid is $31,299.74. This amount differs from the amount set forth at Statement 9 without explanation. Regardless, this amount contradicts the amounts set forth in Ex. 42 and the $46,487.35 delta created from the payments Defendant received and made to Plaintiff as detailed in the Declaration. Defendant's numbers are a moving target, ranging from an admission of $31,299.74 to $89,928.59 and fail to contradict Gurney's declaration.

8. The Declaration, coupled with Defendant's Exhibits 35, 36 and 38, fails to demonstrate Frank's "open" misappropriation. Ex. 35 and 36 purport to serve as evidence that ARC was notified of Defendant's receipt, deposit and use of Walmart checks numbered 1865105 and 1872524 for $64,111.64 and $ 2,078.40 respectively. However, these exhibits do not identify the Walmart check numbers, the SKI invoices, or the full Walmart check amounts. Additionally, Defendant's exhibits confirm that he improperly retained 25% of each of these

payments yet ARC never consented to this split (as provided for in the PSA and stipulated in the Statements) and had no opportunity to object prior to receiving these payments. Defendant testified that he received Walmart check number 1880428 in the amount of $88,890.34 and relies upon Exhibit 38 as evidence that he properly advised ARC of same. However, Ex. 38 has no reference to the Walmart check number, does not address the SKI invoice it is intended to pay, or identify the full Walmart check amount. Rather than remain consistent with the previous 75% and 25% split (a percentage Defendant contends is equitable and consistent with the spirit of the PSA), he issued a payment to Plaintiff of $53,950.00 rather than $62,917.75 (the amount of a 75% split). Again, Plaintiff had no prior opportunity or notice to object to this split or Defendant's misappropriation. These actions are the very shadows that fraud thrives in and reflects anything but actions that are "open, honest and with no concealment or intent to deprive ARC of their money", as proclaimed in the Response.

9.   The PSA obligates Defendant to immediately notify Plaintiff of all direct payments he receives and to retain, in trust and a separate bank account, those misdirected payments until each is either delivered or paid to Plaintiff in the full amount of the original misdirected payment. Any effort by Defendant to portray his efforts as honorable, honest or forthcoming is disingenuous. His failure to disclose the receipt of *all* of the WMP, the check number and full amounts of each payment, and the identification of the corresponding invoices intended for payment coincided with Plaintiff's cessation of purchasing invoices and funding SKI. Frank wanted to obtain additional funding from Plaintiff to continue business as usual. *See* Declaration, ¶ 14. Defendant acknowledged that the WMP were Plaintiff's property but "out of some frustration that American Receivable Corporation stopped purchasing invoices" retained the WMP. *See* MSJ Ex. 9, #16. If this is not direct evidence of Defendant's fraud, it certainly

rises to the level of circumstantial evidence of fraud.

10. Defendant's obligations under the PSA survive termination. *See* MSJ, Ex. 1, section 11.01. Further, any alleged failure by Plaintiff to respond to Defendant's request to verify amounts owed does not constitute a waiver of Plaintiff's rights under the PSA. *Id*., section 11.02. Finally, the PSA's termination procedures only provide for a formal termination by Defendant, an action not supported by summary judgment evidence. *Id*., section 12.01. The split Defendant contends applied to all WMP required Plaintiff's consent and an amendment to the PSA. Section 14.02 of the PSA provides that no course of dealing or parol evidence shall be used to modify any terms of the PSA. Again, Defendant produced no summary judgment evidence of any written PSA amendment.

11. The Declaration is a "sham affidavit" as it fails to provide any explanation for the contradiction or disparity with Frank's January 9, 2020 sworn deposition testimony ("Deposition") and therefore, fails to create a genuine issue of material fact. *See Cleveland v. Policy Mgmt. Sys. Corp*., 526 U.S. 795, 806 (1999). The Declaration relies upon documents that were received and reviewed by Defendant in 2017. *See* Declaration ¶ 6. Additionally, the Declaration is offered or made in bad faith in violation of FRCP 56. Specifically, the Declaration states in several sections that Defendant did not breach the PSA while the Response acknowledges that his failure to deliver the WMP in full to Plaintiff and within 24 hours of receipt is a breach of the PSA. *See* Declaration ¶ 12 and 23 and the Statements #5, 7 & 9.

12. Defendant testified in his Deposition that he was unable to identify the amounts he contends Plaintiff retained from the WMP and whether those payments were for purchased or unpurchased Walmart invoices. *See* MSJ Ex. 7, #14. Further, he previously testified that he did not know the total amount of payments SKI or Defendant made to Plaintiff from the WMP, the

intent or purpose of the Reserve Account, and what fees or amounts can be applied or assessed against the Reserve Account. *See* MSJ Ex. 3, pg. 194-195, ln. 17-8; pg. 158, ln. 20-23; pg. 159, ln. 21-25; pg. 160, ln. 1-9; pg. 162, ln. 19-22. However, Defendant's efforts to introduce or rely upon contradictory testimony reflecting his sudden familiarity with and understanding of the Reserve Account, activity occurring within the Reserve Account, and accounting based upon the Reserve Account is improper and must be rejected by this Court. *See* Declaration ¶ 6, 7, 20, 21 & 23.

13. Defendant's current pleading (Dkt. #11) has been reduced through this Court's rulings to those affirmative defenses set forth in paragraphs 7-14 (i.e. waiver, estoppel, setoff, recoupment and accord and satisfaction). For the first time, the Response asserts a claim that Plaintiff breached the PSA thereby excusing Defendant from his failure to comply with the PSA and Guaranty, specifically the delivery in full of *all* WMP to Plaintiff. *See* Response, pg. 10; Declaration ¶ 12, 14 & 23 (arguing that Defendant was entitled to retain WMP after Plaintiff improperly terminated the PSA). For the first time, the Response asserts claims of willful misconduct, misappropriation of funds, wrong and dishonest misuse, fraudulent and deceptive intent to steal, fraud and corruption, and a failure of presentment on the demand for attorneys' fees. *See* Declaration ¶ 21 & 22. It is important to note that pursuant to the Guaranty, Defendant waived any notice and demand, including presentment of any claims for attorneys' fees. *See* MSJ Ex. 2, ¶ 6. In any event, this Court may take judicial notice of the abated state court proceeding in which Plaintiff made demand for attorneys' fees. Accordingly, Plaintiff objects to the assertion and reliance upon these previously unasserted claims or defenses and moves to strike all references to same, including all supporting evidence.

14. Plaintiff objects to the exhibits attached to the Declaration as it purports to

establish the business record exception for SKI, not Defendant. *See* ¶ 26. Plaintiff further objects to Ex. 2, 15, 21, 27-29, 41, 44 & 45 as Defendant lacks the knowledge of the procedures for preparing these records or the record keeping procedures for the entity that maintained these various documents, Profit Stars. To clarify, the various reports and schedules that Defendant attributes to Plaintiff are documents that are housed and maintained by Profit Stars. Admission of a third-party's business record is proper if the second business determines the accuracy of the first business. *See Martinez v. Midland Credit Mgmt., Inc.*, 250 S.W.3d 481, 485 (Tex. App.—El Paso 2008, no pet.). Defendant has failed to do so.

15. Plaintiff further objects to Ex. 27, 42, 43, 47 and 48A as each was prepared for specific litigation purposes, thereby removing a required indicia of reliability qualifying it as a business record. *See Sessums v. State*, 129 S.W.3d 242, 249 (Tex. App.—Texarkana 2004, pet. ref'd.).

16. On October 22, 2019, this Court issued an order compelling certain discovery responses and documentation by Defendant on or before November 6, 2019. *See* Dkt. #38. Ex. 16, 27-29, 32, 37, 40, 42, 43, 47 and 48A are clearly responsive to the Court's order yet were produced for the first time with the Response. *See* Requests for production 4 and 11 and interrogatories 14 and 18 that were addressed by the Court's order. Additionally, Defendant was under a continuing obligation to supplement his prior discovery responses, including the production of these challenged exhibits, but failed to do so. *See* Requests for Production 29, 35 &39 relating to Defendant's contention that Plaintiff stole Defendant's funds, all documents reviewed or relied upon in responding to interrogatories and all documents supporting Defendant's contention that he did not convert Plaintiff's property. Further, Plaintiff's Second Motion to Compel found at Dkt. #44 remains outstanding. Plaintiff objects to the exhibits and

moves to strike each from the Response.

17.     Conclusory statements, hearsay and speculative statements are not proper summary judgment evidence. *See Ryland Group v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996). Plaintiff objects to those conclusory statements highlighted in green, hearsay highlighted in red, and speculative statements highlighted in green, as reflected in the portions of the Declaration attached as Exhibit 1.

18.     The Declaration states that Defendant is the president of SKI but fails to state when he assumed this position, the associated responsibilities, and the level of involvement he had with overseeing SKI's operations. Others working for SKI had or have the requisite level of knowledge to testify to those statements contained in the Declaration. Specifically, Kevin Westdyk was the chief financial order and handled the "day-to-day accounting practices" and would have been "directly involved with Brad or Jack at American Receivable, purchase of things." *See* MSJ Ex. 3, pg. 72; ln. 1-14. Defendant's disclosures do not designate him to testify on the areas addressed in the attached Declaration. Instead, Kevin Westdyk was designated as the one with the specific knowledge regarding the PSA, reserve account, and invoices purchased. Because Defendant failed to positively demonstrate his qualifications and the requisite basis for such personnel knowledge to testify as detailed in the Declaration, specifically the calculation of payments received and made, the reserve account, and Plaintiff's damages, the Declaration must be struck from the response. *See Radio KSCS v. Jennings*, 750 S.W.2d 760, 761-762 (Tex. 1988).

19.     Defendant's summary judgment evidence is neither proper nor sufficient to create a genuine issue of material fact. The Declaration is a tribute to Defendant's interpretation of schedules and documents, including the PSA, and is crammed with opinions relating to

Plaintiff's claims and damages. Regardless, the Declaration is insufficient to controvert the clear and concise testimony of DeLoss Braddock Gurney, Jr. A denial of Plaintiff's summary judgment rewards Defendant for his blatant disregard of this Court's order compelling certain discovery responses, his evasive deposition testimony and his contradictory declaration as well as the waiver of his defenses as clearly provided by the PSA and Guaranty.

20.    Defendant's efforts to confuse purchased versus unpurchased invoices is immaterial as provided by the PSA and Plaintiff's immediate rights to possess *all* WMP. Defendant's attempts at deflecting attention away from Plaintiff's application of payments it received from Defendant to the reserve account rather than invoices is an attempt to mislead this Court and misrepresent the uncontroverted facts established by Mr. Gurney. Accordingly, Plaintiff is entitled to all relief requested in its Motion for Summary Judgment.

Respectfully submitted,

/s/ Eric L. Scott
ERIC L. SCOTT
**SCOTT | VISCUSO, PLLC**
escott@sv-legal.com
1105 North Bishop Avenue
Dallas, Texas 75208
214-289-2891
480-393-5063– Fax
**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that on this the 13th day of March 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of the United States District Court.

/s/ Eric L. Scott
Eric L. Scott